No. 21969.

LEO FOLKS, JR. *v.* WAYNE K. PATTERSON, WARDEN OF THE COLORADO STATE PENITENTIARY.
(412 P.2d 214)

Decided March 21, 1966.

MELVIN ROSSMAN, for petitioner.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, for respondent.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

LEO FOLKS, JR., an inmate of the Colorado State Penitentiary, brought an action in the nature of habeas corpus in the district court in and for the City and County of Denver against Wayne K. Patterson, as warden, alleging that he (Folks) was then and there being illegally and unlawfully detained by the warden in the aforementioned institution. This petition was denied without hearing by the Honorable James C. Flanigan, one of the judges of the Denver District Court, on the ground that the petition showed on its face that Folks was not entitled to the relief which he sought, *i.e.*, release from the state penitentiary.

Thereafter, by way of an original proceeding, Folks filed a petition in this court seeking the issuance of a writ in the nature of habeas corpus, naming Wayne K.

Patterson as the respondent, and again alleging that he (Folks) was being illegally and unlawfully detained in the state penitentiary. The gravamen of Folks' petition in this court was that his parole had been improperly revoked by the State Board of Parole, in that the parole board had allegedly revoked his parole some seventeen days *after* his period of parole had expired.

A writ thereupon issued from this court, Folks' petition indicating, *prima facie,* that he was entitled to relief, and in due time the respondent, Wayne K. Patterson filed a return thereto. In the return Patterson alleged that Folks' parole was properly suspended and revoked and that his incarceration in the state penitentiary was therefore lawful, for the reason that Folks' parole had been suspended on July 9, 1964, two days before it would have otherwise expired.

This court, then, appointed the Honorable James C. Flanigan to serve as its referee and directed him to hold a hearing on the issues raised by the petition and the return thereto. Also, this court ordered that counsel be appointed to represent Folks at such hearing. This hearing has now been held and the referee has made his report. Counsel having filed briefs in support of their respective positions, the matter now awaits our determination.

Although the findings of the referee do not seem to square in all particulars with the record as made before him upon hearing, the salient facts would nonetheless appear to be as follows:

1. on March 9, 1959 in the district court in and for the City and County of Denver Folks was sentenced to a term of from seven to ten years in the state penitentiary upon his plea of guilty to a charge of robbery;

2. on October 11, 1962 Folks was paroled from the state penitentiary, and under the terms of his parole agreement he was to remain on parole for a period of twenty-one months, or until July 11, 1964;

3. on April 2, 1964 Folks was arrested by the Denver

Police Department and as an outgrowth of that arrest he was later charged with carrying a concealed weapon;

4. on May 18, 1964 Folks was sentenced in the Denver District Court to six months in the Denver County Jail upon his plea of guilty to a charge of petty larceny; and

5. on July 13, 1964 Folks pled guilty to a charge of carrying concealed weapons and on this occasion was sentenced to a term of ten months in the Denver County Jail by the Denver District Court.

In connection with the foregoing series of events, the State Board of Parole took the following action:

1. on April 3, 1964, at a time when Folks had just been arrested by the Denver Police Department in connection with the carrying of a concealed weapon, the State Board of Parole placed a "hold order" against Folks;

2. on or about April 11, 1964 the State Board of Parole released its "hold order" on Folks, a capias having issued by that time as a result of the filing of a charge against him of carrying a concealed weapon;

3. on July 9, 1964 (two days before Folks' parole would have otherwise been terminated) the State Board of Parole acting through its executive director suspended Folks' parole and ordered him returned to the state penitentiary to await further action of the State Parole Board;

4. on July 28, 1964 the State Parole Board acting at its regular monthly meeting formally revoked Folks' parole; and

5. on or about July 20, 1965, at which time Folks had just completed serving his two sentences to the Denver County Jail, Folks was returned by parole authorities to the state penitentiary to serve out the remainder of the seven to ten year sentence imposed upon him in 1959.

Both the suspension order of July 9, 1964 and the revocation order of July 28, 1964 were based upon the fact that the parole authorities were of the mind that

Folks had broken his parole agreement in the following particulars:

1. on March 27, 1963 Folks had been arrested by the Denver Police Department while he was in the process of committing a burglary; and

2. on April 3, 1964 Folks was again arrested by the Denver Police Department at a time when he was operating a motor vehicle while under the influence of alcohol and was at the same time in the company of former inmates of the state penitentiary, and also had in his possession on that occasion a concealed weapon.

█ In the summary of his argument Folks initially contends that he was in the first instance illegally and unlawfully detained by the State Board of Parole in that he was held as a suspected parole violator for more than the twelve day period permitted by C.R.S. 1963, 39-17-4 (1) (a), and that hence the suspension of his parole on July 9, 1964 was improper and his subsequent reincarceration in the state penitentiary was therefore unlawful. Actually, as we understand the record, Folks was confined in jail under a hold order from the police authorities for a period of eight days only, and thereafter he continued to be held in the Denver County jail under a capias which had issued as the result of a filing of a charge against him of carrying a concealed weapon. Be that as it may, this argument was considered — and rejected — by us in *Johnson v. Tinsley,* 157 Colo. 539, 404 P.2d 159. In that case we held that once the parole board has revoked one's parole, the fact that such person prior to such revocation may have been held for more than the period permitted by the applicable statute was of "no moment."

█ Folks additionally, and alternatively, contends that having once placed a hold order against him, the parole board's action some eight days later in lifting the hold order constituted a release of the prisoner by the parole authorities and that therefore the subsequent act of first suspending and then revoking his parole was

contrary to the statutory procedure regarding revocation. Hence, it is argued, his present incarceration in the state penitentiary is illegal. With this contention we do not agree.

The record contains testimony to the effect that the reason the parole board lifted its hold order against Folks was that a criminal charge of carrying a concealed weapon had as of that time been filed against Folks and that inasmuch as that particular charge had not been resolved and for the further reason that the Denver Police Department had the actual custody and control of Folks, the parole authorities decided to await further developments pertaining to the disposition of the pending criminal charges. In this same general connection the supervisor of the State Board of Parole testified that by the act of lifting its hold order, the parole authorities had not "cleared" Folks; but, on the contrary, were not only waiting until the charges then pending against Folks were resolved, but were also biding their time until the parole board could actually take Folks into their custody.

Parole is uniformly held to be a matter of grace, favor or privilege, and not a matter of right. In *Berry v. State Board of Parole,* 148 Colo. 547, 367 P.2d 338, we held that the acts of the State Board of Parole in revoking one's parole were not subject to review by the judiciary, be it through the medium of certiorari, habeas corpus or mandamus.

We now hold that the time limitations contained in C.R.S. 1963, 39-17-4 do not, as such, limit or prescribe the time within which the parole board must act in order to properly suspend or revoke one's parole, and that such time limitations only fix the maximum period of time a suspected parole violator *may be held in jail by the parole authorities* while they investigate his activities and determine what action should be taken. In support of this general conclusion, see *People, ex rel.*

*Patterson v. District Court,* 159 Colo. 142, 410 P.2d 630; and *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353.

Accordingly, the writ heretofore issued is dicharged.